May it please the Court, Matt Friedlander on behalf of the appellant Thomas W. Sikes. So this is a Freedom of Information Act, or FOIA, case that involves Mr. Sikes requests for two separate documents that were part of an NCIS investigative report involving the 1996 suicide of Admiral Mike Borda. Each of the separate documents raises a different distinct issue with respect to these, and they are these, what I'll refer to as the backseat notes, which are notes found in the back of Mr. Borda's vehicle, and a suicide note which was found on the desk in his office, his home office. The FOIA provides that, upon request, a government shall provide agency records unless one of nine exclusive statutory exemptions apply. The exclusivity of those exemptions is both from the plain language of FOIA as well as U.S. Supreme Court interpretation of that plain language. Now, I notice that the district judge did not analyze the exceptions, and of course that's something you say needs to be done, I gather. That's exactly right, Your Honor. With respect to the suicide note, Mr. Sikes alleges that the privacy exemptions do not apply to that document. Under this Court's precedent, the district court and under the statutory language itself, the district court is obligated to inquire into the providence of the exemption and to note them. With regard to the relief that you're asking for, are you asking us to analyze the exceptions or are you asking us to remand it to the district court? Your Honor, we're not asking that you analyze the privacy exemption at all. That's not the relief we're asking for. Even for the notes from the backseat? Well, with the notes from the backseat, we would ask that, since their sole grounds for withholding those notes was incorrect, that the form of relief would be an order instructing the district court to have the Navy produce the documents. You say it's in, they had, these are the documents they had already given to him, though, correct? He wanted, he essentially had a repeat of what he had already been given, correct? I don't know if it was essentially the same request, because subsequent incidents happened that made Mr. Sikes believe that perhaps the original backseat notes he received in 2011 were, in fact, not really the backseat notes, or at least were not a complete version of what is contained in the NCIS report. But they essentially, it seemed to me pretty much the same request, and they had given it to him once before. Is your position that a person can request records, get the records, a year later say, hey, try it again, I'd like the same records, and just keep going on and on and on? And Your Honor, that is our position. So if every six months you want to harass a particular agency, every six months the agency will stop everything and come back and give you just what they gave you six months before? Yeah. And there's a couple of, first of all, there's no harassment here. There was really not. It was a second request for the documents because he was suspicious of the authenticity of the first documents. What kind of a showing did you make about the suspicion? Was there something that occurred that, some information that came to light? Yes, Your Honor. There is a memorandum. So in April of 2014, Mr. Sykes asked for everything that had been provided to him in 2011, and the Navy said, no dice, we've already given you those documents. And then of their own volition, the Navy produced a 1998 memo, and Mr. Sykes alleges this in his complaint, and it's at Exhibit JJ9. And in that memorandum, it's written from an NCIS officer, and it says, various miscellaneous handwritten notes were found in the backseat of the vehicle. Those items, excluding the typewriter, were destroyed by command in the presence of RA. But they were produced again, were they not? Exactly. It is confusing as to this 1998 memo suggests that the notes were destroyed in April of 1998, yet in 2011, the Navy produced what it purports to be the backseat notes to Mr. Sykes, and now Mr. Sykes, of course, questions the authenticity of that prior production, which is why he requested them again, and why it's, you know, odd that the Navy wouldn't produce them again. Now, Judge Carnes, to get back to your question, first, simply providing documents before is not one of the nine enumerated exemptions. And that is the ---- Well, it may not be an exception, but what you're arguing is that they withheld documents. Sorry, Your Honor. Basically, the premise of the whole exercise is did they withhold a document. Correct. And before you get to the exceptions, did they withhold a document? No. They produced it the first time you asked for it. Well, I think the tax analyst case from the Supreme Court is pretty informative. They defined withholding, or they discussed what withholding meant. And in that case, you know, the Supreme Court said, when the department refused to grant plaintiffs' request for the district court decisions in its files, it undoubtedly, quote, withheld these decisions in any reasonable sense of the term. And we think a reasonable meaning of withhold would be to refuse production of. And that's exactly what ---- But wasn't that case very distinct? I mean, if actually the agency was sending the defendant all over Creation to find different documents, here there's none of that. They didn't withhold the document. They gave it to him. He just wants them to go through the very same exercise again, essentially. Yeah, that's right. And also, another thing I wanted to address was there's really no ---- there's no risk of kind of ad nauseum harassment here. I mean, the Freedom of Information Act was amended in 2016. And it provides now that after three requests for the same document, the Navy is obligated to post that document and make it available by electronic means to any future FOIA requester. There's also a separate subdivision of the statute that says ---- You mean after three requests by three different people or the same person or whatever? Well, it doesn't specify. It just says three requests. And I'm not really here to argue about whether it would be by other people or not. And then the one below it, the other ---- Does that statute ---- that statute would control us here, although we've only had two requests, I guess, right? Yeah. And the point is, Your Honor, if this Court rules in our favor, there is no risk of repeat harassment of the Navy from repeat requests. Because after the third request, the Navy can simply say we've ---- the Navy has an obligation to post the document to their online reading room. And then they can just send a letter saying to any future requester, see our online reading room and give a link. Can they get in trouble with the taxpayer decision if they do that? What's that, Your Honor? Will they get in trouble with the decision saying you can't send people other places, you've got to go mail them? You know, I think the ---- I think Congress's amendment of the statute, which is decades now after tax analyst, would not conflict with the tax analyst decision at all. It's really, you know, Freedom of Information Act is just meant to be a means of, to make efficient disclosures and transparency. And saying that once that you've requested three times, we're going to publish it to our online reading room, any future request will simply direct you to that, I mean, our position is that's not unreasonable at all. Counsel, could I ask you a question about the suicide note? Yes, Your Honor. Why isn't that subject to the privacy exemption? Again, Judge O'Scanlan, we are not, we are not arguing by any means that the privacy exemption does not apply. We understand that it is very possible that the district court will determine that the privacy exemption does apply. All we're asking is that the district court conduct the de novo review of the claimed exemption. Essentially, the district court is not allowed to call its own files, and that's exactly what happened here. They said privacy exemption applies, and then they argued a motion to dismiss saying Mr. Sykes does not challenge the privacy exemption, which is incorrect. He did. He alleges that the privacy exemption wouldn't apply because there are various underlying policy considerations. The suicide has been attenuated for a long time. So the question then, it then becomes, and our case law on this, the Eleventh Circuit case law on this is clear. It's the Elie case or Elie. I don't know exactly how it's pronounced, but it says that, you know, there is a statutory obligation for the district court to review the propriety of a claimed exemption de novo. Why can't we make that same determination here? If we are satisfied that there is no set of facts or additional argument that could be brought to bear, that would change the view of the privacy exemption. Judge O'Scanlan, I think the answer is that this court is a court that is a correction of errors. It's not a fact-finding court. And the district court is best suited to make, to receive evidence and make a determination as to whether the privacy interest in the suicide note outweigh any public interest. You know, in fact, you know, the Navy cites a lot of cases on this, on the suicide note. They are all summary judgment cases in which the district court received evidence. None of them are at the motion to dismiss stage. So the procedural posture of this case being a motion to dismiss is critical to our suicide note argument. And all we're asking is that this court remand so that the district court can consider the propriety of the privacy exemption de novo. Thank you. Sotomayor, may I please the Court? Good morning, Your Honors. James Stuchel for the United States. For this Court to remand on the backseat notes issue, it would have to make two rulings. First, that the Navy violated FOIA when it declined to give him a second copy of the backseat notes, and second, assuming that violation, whether Mr. Sykes can seek a remedy for that violation with a second Federal FOIA lawsuit. The answer to both those issues is no. The Navy did not violate FOIA when it declined to give him a second copy of the notes. My authority for that lies heavily on the Supreme Court's decision in GTE Sylvania. In that case, the Court stated that the typical FOIA case arises in a situation in which the government refuses to turn over documents that will reflect poorly on the agency in its performance of the duties. And in that typical context, yes, the government has to point to one of FOIA's nine exclusive exemptions. But GTE Sylvania arrived in an entirely different context. There, the government withheld the document pursuant to a Federal district court order to do so. And the Supreme Court affirmed that decision and said that the agency did not violate FOIA. We have very similar circumstances here. It's almost 180 degrees, whereas in GTE Sylvania, the government was under a district court order not to provide the documents. Here, we are under a district court order saying that we already did fully disclose all the documents in response to his first request. Counsel, could you help us understand the issue about the NCIS report, which indicated that the documents were destroyed, and nonetheless, in 2011, as I understand it, they were produced? That's correct, Your Honor. I'm glad you asked that. I did not address this as thoroughly in my brief as I should have. But here's what happened. Admiral Borda died in May of 19—excuse me, April of 1996. Then there was—the Navy issued a memo the next month, in May of 1996, saying that it had—the memo described its inventory of Admiral Borda's official vehicle the very day he died. It described all the various items it found, and one of those items was indeed the backseat notes. That's at issue here. That memo says explicitly that the Navy appended copies of the backseat notes to that 1996 memo. The Navy gave Mr. Sykes that very memo, not just the backseat notes, but the cover memo to which the backseat notes were preserved and attached in response to Sykes 1. The confusion arises because then in May of 1998, the Navy issued a memo to the file saying that the originals—the original backseat notes had been destroyed. So the distinction Mr. Sykes is missing is between copies and originals. It's undisputed that the Navy retained copies. It did so in the 1996 memo regarding the inventory of his car. It's undisputed that what the Navy destroyed two years later were the originals. So there is absolutely no suspicion whatsoever. In fact, Your Honor— And so what does the Navy rely on in terms of its refusal to produce this on the second round? We rely entirely on GTE Sylvania, Your Honor. In GTE Sylvania, the Court said that a FOIA case arising outside of the ordinary context does not need to be settled pursuant to one of the specific exemptions, and that's what we've done here. There are very extreme circumstances in this case, Your Honor. I mean, first of all, the Navy entirely gave him the documents he's requested in response to a court order in Sykes 1. The District Court explicitly found, quote, all documents responsive to request 2 have been disclosed. Mr. Sykes did not dispute that. If he had any beef with our disclosure, he could have done—he could have taken discovery in Sykes 1. Well, then what's your interpretation of the tax analysis case? Tax analysis applies in the usual context, Your Honor, when the FOIA request is for documents that the government might otherwise withhold because they reflect poorly on the agency, and that's not what we have here. These are really extreme circumstances. I mean, beside the fact that we gave him the documents pursuant to Sykes 1, beside the fact that he didn't dispute it, he then filed a duplicative request. This is request number 5, and it's not just that this is the same person asking for the same documents. It's that request 5 explicitly incorporated by reference request 2. Mr. Sykes asked—sent to the Navy a request for another complete copy of the documents you gave me in response to the attached request, and he attached a verbatim copy of request 2. So there's no dispute that he's asking for exactly the same documents in both cases. The Navy responded— The phraseology of the request was, I would like what I've already requested. That was how he phrased it, essentially. Yes, Your Honor. I believe I'm quoting directly. Request 5 asked for a complete copy of all materials requested in request 2, and then he attached an explicit copy of request 2. There was no distinction whatsoever. It's important to note that these aren't—this isn't a request for documents from which the Navy could have accumulated more in the intervening time. These are requests for documents from 1996. They're historical documents. We couldn't accrue any more documents in the passage between the time he requested 2 and 5. Can I turn to the issue of collateral estoppel? That's what you argued in your brief to us, right? Yes. Where did you argue that to the district court? Oh, it was in the motion to—actually, in the motion to dismiss, we argued res judicata, Your Honor. Which is not the same thing as collateral estoppel. That's correct. But, of course, this court can affirm— So you didn't argue collateral estoppel to the district court? That's correct. And you didn't argue res judicata to this court? That's correct. Okay. So, of course, this court can affirm on any alternative basis, and the district court did not rule on res judicata. He said in a footnote that the government's res judicata argument was persuasive, but he didn't explicitly adopt it. And do we have a final judgment? I mean, does a dismissal for mootness constitute a final judgment under either doctrine? It does—no, it does not constitute a final—excuse me. It does constitute a final judgment, but it's not on the merits. Well, that's—yeah, of course. So, I mean, it doesn't qualify for either doctrine in terms of that requirement. Well, Your Honor, dismissal on the merits is a requirement of res judicata, but not of collateral estoppel. That's why I've only argued collateral estoppel here. Collateral estoppel applies when in the first lawsuit between identical parties, the district court with exercising proper jurisdiction ruled on an issue of fact or law that the parties fully litigated. There's no requirement that the ruling on that issue be on the merits. This is an important distinction. Res judicata applies to claims, claims in the broad sense of a cause of action or a ground of—for relief that a plaintiff asserts in his or her complaint. So in that context, it makes sense that the ruling on the cause of action has to be on the merits as opposed to some procedural deficiency such as statute of limitations, for example. But I haven't invoked res judicata. I haven't invoked collateral estoppel, and that applies not to a broad claim or ground of relief, but to any issue of law or fact that was litigated in the previous case. I guess just to follow, I understand the point you're making, and it's helpful. Thank you. But, I mean, is—do you have precedent that says that a lawsuit that was dismissed for mootness has been fully and fairly litigated as required for the application of collateral estoppel? Well, remember, it was—it was moot because the parties agreed and the district court found that we gave him the document he sought. So it wasn't moot because the plaintiff temporarily lost standing due to some external factor. It was moot because we gave him the document that he seeks. And actually—but I do have further authority for that, Your Honor. I didn't—I did not cite this in my brief, but there's an Eleventh Circuit opinion called Pleming, P-L-E-M-I-N-G. The site is 142 F3d at 1359. And in that—there's about a slight small paragraph in which this court said that for purposes of collateral estoppel, an issue of factor law is fully litigated if three things happen. The issue was properly raised, it was submitted to the court for determination, and the court determined it. But you've already said you didn't raise collateral estoppel there. I mean, you—you're talking about the merits issue. No, no. I'm talking about my argument that collateral estoppel applies here, and of course the court can affirm on alternative grounds. That's why I've raised collateral estoppel. And then the court asked me if I had further definition of what it means to be fully litigated. The Pleming case describes what fully litigated means. All we have to do is have raised the issue of factor law, submitted it, and the court determined it. And that's what we have here. We raised the issue as to whether we provided him the backseat notes in Cites I. In fact, we represented that we had done that. He agreed in his response to our motion to dismiss. He said that the Navy has complied. As if that weren't enough, the district court entered an order specifically finding that the Navy had produced all documents responsive to the request. So that's a decision by a court of competent jurisdiction that resolves an issue of fact that we've already complied. But opposing counsel argues that even if that's true, this time you withheld them. If he asked for them ten times, you've got to give them to him ten times. Every time he asks, you've got to get them to him.  That's his argument. Yes. That's the argument. But again, I rely on GTE Sylvania that says this is entirely different context. You know, one important point I should make is you might ask, when I first picked up this file to handle the appeal, I wondered why the Navy didn't just give him the documents again. It seems like that would have been simpler. But after I dug into the record, I realized the Navy actually went further, much further, and tried to do him a favor. As he explained in his appeal of the denial of Request 5, he raised what he called certain, quote, certain inexplicable oddities that suggested that there were more documents. Now, it would have been the easiest thing in the world for the Navy to just give him another copy of the six-page document that he indisputably already has, but they didn't do that. Instead, on appeal, they wrote him a two-page, single-spaced letter addressing each and every one of these, what he calls, inexplicable oddities and completely debunking them and showing them why each one was entirely unfounded. It didn't stop there, though. In the second part, the Navy said, we've conducted a second review and concluded that we responded to you fully the first time. It finally concluded that, confirmed in writing, that all documents responsive to the request have been provided. So the Navy's response was not fluent here. They were just — they knew this was somewhat of a vexatious litigant. They were trying to assuage his concerns. They were trying — Well, what was the — what was the showing of his being a vexatious litigant? Certainly that would be relevant to your argument, would it not? Yes, Your Honor. I think it's — that's a fair characterization because he had submitted six different requests for essentially the same documents. It — remember, our terminology in the briefs, we refer them to requests one through ten. Request two was the first one that asked for the backseat notes. That was addressed in psychs one. At the conclusion of that case, he submitted request number five. That's what I talked about earlier. It explicitly adopted by reference request two, asking for the same documents. As if that weren't enough, then requests six, seven, eight, and nine further asked for different variations of the backseat documents. Before your time is up, I would be interested in your response to opening argument made by opposing counsel about whether we can apply the privacy exemption or not, given the fact that the district court did not make a specific finding on that. That's correct. Yes, Your Honor, this court absolutely can on the strength of two Supreme Court precedents, Favish and Reporters Committee. In both those cases, the Supreme Court held that in certain situations, requests for documents, the balance of the privacy interests characteristically tips in favor of withholding. And those two cases involved — Favish involved the famous case of the photos of Vince Foster's death. And that — and those were merely visual representations of a body. They may have been challenging and unpleasant, but they could not have conveyed any of the intimate details of the victim's life. Whereas here, we're talking about a suicide note. The district court sent this on a motion to dismiss. It was required to take Mr. Sykes' allegations as fact. Throughout this entire proceeding, he has alleged that the document he's after is Admiral Borda's suicide note to his wife left in the personal residence they shared, found on his private desk in his private study. Those must be taken as fact. As if that's not enough, we have Favish, in which the court said that any time a person seeks any data, not just photos, but any data concerning the mysterious death of another, then he has a heightened burden. First, it said that the — there's undisputably a privacy interest for the surviving family members. It said that categorically, without any examination whatsoever of the details of the photos. So for that reason, this court, similarly, doesn't need to examine the specifics of the suicide note, because we know it's even more sacrosanct than the photos in Favish. May I — may I briefly conclude? Please. Yes. So in both Favish and Reporters' Committee, there's no indication whatsoever that the Supreme Court ever looked at the details. It simply acknowledged, as a categorical matter, that the survivors had a privacy interest. It didn't need to look at the details to assess how strong the privacy interest, and that's because, in those cases, the public interest that the claimant asserted was nil. We have that same thing here. And you — and in conclusion? Thank you. Thank you. Just a few points in response. Now, Judge O'Scanlan, I believe you were on the Favish panel that was before the Ninth Circuit. That's right. And as you may recall, that was a summary judgment case, and there was evidence presented by the government Same with Reporters. That was a summary judgment case discussing whether rap sheets of inmates was — could be categorically banned. They did not reach the decision that there could be a categorical ban on such documents until it had received evidence from the litigants at the summary judgment stage. You know, the procedural posture, again, in this case, is critical. This was a motion to dismiss. The district court said, Mr. Sykes is not challenging the privacy exemption. That is incorrect. And by doing that, it abrogated its statutory duty to review the propriety of the exemption de novo. And that's all we're asking, is that they remand so that the district court can look at that privacy exemption de novo. Judge Martin, with respect to your questions about collateral estoppel and res judicata, it's very well settled in this circuit that an adjudication on the merits is required for either of those doctrines to apply. There was no adjudication on the merits here with respect to the backseat notes because that issue was dismissed as moot. Even the Pleming case he cited, I mean, he — they don't meet their own standard. It says that the court did not — you know, one of the — the final element was that the court kind of determined — reached the question on merits, and that didn't happen there. That can't happen when there's a dismissal as moot. So neither of those doctrines will apply. Mr. Stuchel also talks a lot about Sylvania. And that case is — is completely distinguishable from this case. It involved a Federal court order enjoining a government agency from disclosing certain documents that prohibited a FOIA request. And, yes, that is not one of the nine exemptions, but the D.C. Circuit and tax analysts looked back at Sylvania and said, that case is clearly limited to its facts, and it is the sole exception to the nine-exclusive exemption requirement. And the Supreme Court and tax analysts visited the issue as well and said essentially the same thing, that — that G.T. — that the Sylvania case is restricted to its facts. That means that the general rule that the nine exemptions are exclusive is what's controlling. Now, Judge Carnes, to get back to some of your questions from the first time, you know, Mr. Sykes could ask 10 times for these documents. If he asks again, that will implicate the — the statute order requirement to post to the online reading room. So the subsequent seven requests will simply require the Navy to write Mr. Sykes a letter directing him to that website. Also, from a policy perspective, this kind of — we call it the one-shot rule in our briefs. It's — it's just untenable. I could have asked for documents 20 years ago, and I lost them, or they were destroyed, or I moved. Or perhaps what the Navy sent me the first time wasn't the right thing. In fact, that's what Mr. Sykes alleged happens — alleges happened here. In those instances, it cannot be the case that you are forever prohibited for asking for the document — from asking for the documents again subsequently. I mean, that rule just doesn't make sense. Well, he's not alleging he lost them. He — his concern is the last thing he said. Correct. It's the very last thing. His concern is that whatever was provided to him in 2011 is not actually Exhibit 36 of the NCIS report. And so, you know, the Navy — let's put it this way. There is no case prohibiting repeat requests. The Navy cannot cite you a single case saying you can't ask again. And from a practical standpoint, adopting such a rule would not only abrogate the statute — the plain language of the statute and the U.S. Supreme Court authority, but it just wouldn't make sense to forever bar someone from asking for a document again. And again, these kind of — there is no risk of harassment because of the new amendments to the statute. So unless the Court has any further questions, I'll rest and ask that you reverse. I noticed that you referred to the Exclusion No. 6 — or Exemption No. 6 while the Navy talked in terms of Exemption No. 7c. I mean, I would assume you would agree either might be applicable and worthy of consideration. I would, Your Honor. Exemption 6 applies to information that is private, and 7c refers to information that's private in the course of a criminal investigation. So they're indistinguishable for the purpose of this case. Thank you. We appreciate the presentation. It was very helpful. And we will call the next.